COMMONWEALTH vs. JOSE RAMON LACEND.

No. 91-P-1335.

Essex. September 17, 1992. - November 2, 1992.

Present: BROWN, DREBEN, & PORADA, JJ.

*Controlled Substances. Entrapment.*

Entrapment was not a proper ground for pretrial dismissal of a criminal
complaint, as the issue of entrapment may be raised only at trial; more-
over, the facts as stipulated were not sufficient to raise the entrapment
issue by showing inducement by a government agent. [496-497]
There was no merit to a criminal defendant's claim that the actions of a
police officer, who posed as a drug dealer, in selling cocaine to the de-
fendant were illegal, where G. L. c. 94C, § 7 (*d*) (3), provides that a
law enforcement officer acting in the regular performance of his official
duties may lawfully possess and distribute controlled substances. [498]
The conduct of an undercover police officer in selling cocaine to a criminal
defendant was not so egregious as to bar the defendant's prosecution for
possession of a Class B substance in violation of G. L. c. 94C, § 34.
[498]
A criminal defendant who was arrested after he purchased cocaine from
an undercover police officer could be found to have "possessed" the
drug within the meaning of G. L. c. 94C, § 34. [498]

COMPLAINT received and sworn to in the Lawrence Divi-
sion of the District Court Department on February 1, 1991.

A motion to dismiss was allowed by *Paul F. Mahoney*, J.

*Margaret J. Perry*, Assistant District Attorney, for the
Commonwealth.

*James B. Krasnoo* for the defendant.

DREBEN, J. Claiming that he was entrapped into commit-
ting the alleged crime of possession of cocaine and that, in
any event, he did not "possess" the drug, the defendant
moved for dismissal of a complaint charging him with unlaw-
ful possession of a Class B substance (G. L. c. 94C, § 34). A
District Court judge, without stating his reasons, allowed the

motion. This is an appeal by the Commonwealth from the dismissal.

The motion was accompanied by a copy of a police report. On the day the matter was scheduled for hearing, counsel for the parties agreed to forgo an evidentiary hearing and, in addition to the facts set forth in the police report, orally stipulated to the anticipated evidence. From the somewhat garbled, fourteen-page transcript of the hearing, which contains thirty-eight designations of "inaudible," the following facts appear.[1]

Two days after Lawrence police officers found several packets of cocaine in an alleyway, a location known for heavy drug dealing, one of the officers, as part of an undercover operation, retrieved the cocaine from the police evidence locker and returned to the alleyway, where he posed as a drug dealer. During the several hours that the officer was there, some twenty-four persons, among them the defendant, approached him and asked whether he had any drugs to sell. The officer exchanged cocaine for small sums of money and then signalled to two other officers to arrest the purchasers. Some succeeded in fleeing with the drugs and evading arrest. The defendant did not enjoy such success.

1. Entrapment was not a proper ground for dismissal. Although the contemplated evidence was stipulated, entrapment involves "[e]vidence of a defendant's conduct and the attendant circumstances," *Commonwealth* v. *Shuman*, 391 Mass. 345, 352 (1984). As such evidence will also be relevant at trial, the Supreme Judicial Court has concluded that "the issue of entrapment may be raised at trial *only*" (emphasis supplied) and should not be the basis for a motion to dismiss. *Commonwealth* v. *Shuman, supra* at 352 & n.2.

Moreover, the facts as stipulated were not sufficient to raise the entrapment issue by showing inducement by a gov-

---

[1] In this case the panel, despite the numerous "inaudible" designations, was able to understand the transcription of the oral stipulation. The deplorable condition of transcripts from the District Court makes it inevitable that appellate review will be impossible or greatly impeded in some case soon. Funding for the replacement of the District Court's antiquated and inadequate recording equipment is urgently needed.

ernment agent. The applicable principles for the defense of entrapment are set forth in *Commonwealth* v. *Shuman*, 391 Mass. at 350-351 (quoting from Perkins, Criminal Law 1031 [2d ed. 1969]):

> "It is socially desirable for criminals to be apprehended and brought to justice and there is nothing whatever wrong or out of place in setting traps to catch those bent on crime; [but] the state cannot tolerate . . . having its officers, who are charged with the duty of enforcing the law, instigate crime by implanting criminal ideas in innocent minds and thereby bring about offenses that otherwise would never have been perpetrated."

"No entrapment exists 'if the accused is ready and willing to commit the crime whenever the opportunity might be afforded.'" *Id.* at 351, quoting from *Commonwealth* v. *Miller*, 361 Mass. 644, 651 (1972).

Here, the defendant initiated the request to purchase drugs from the purported dealer. "The evidence does not reveal 'lengthy negotiations . . . , aggressive persuasion . . . , coercive encouragement . . . [or] repeated or persistent solicitations,'" or any other evidence suggestive of improper inducement. *Commonwealth* v. *Shuman*, 391 Mass. at 352, quoting from *Commonwealth* v. *Thompson*, 382 Mass. 379, 385 (1981). Even a passive request by the officer, which would be insufficient to constitute entrapment, was absent. The mere posing as a drug dealer is inadequate to support a finding of inducement. Artifice is permitted. See *Commonwealth* v. *Harvard*, 356 Mass. 452, 459 (1969).

Even if the hurdle of finding evidence of inducement were overcome, the defendant's initiation of the request for drugs obviously raises the factual issue whether the defendant was predisposed to commit the crime. The existence of this question of fact precludes the conclusion that the defendant, as *matter of law*, was entrapped. *Commonwealth* v. *Shuman*, 391 Mass. at 353.

2. The defendant's claim that the actions of the police were illegal is foreclosed by G. L. c. 94C, § 7(*d*)(3), which provides that a law enforcement officer acting in the regular performance of his official duties may lawfully possess and distribute controlled substances. See *Commonwealth* v. *Comins*, 371 Mass. 222, 231 (1976) (undercover police acted lawfully in obtaining unlawful drug prescriptions).

3. The defendant's additional claim that the conduct of the police was so shocking as to offend due process is answered by the discussion in *Commonwealth* v. *Shuman*, 391 Mass. at 353-355. The evidence did not show "coercion, violence, or brutality" or "persistent exploitation of personal weakness." *Id.* at 355. There was no other police misconduct so egregious as to bar the defendant's conviction. *Commonwealth* v. *LaBonte*, 25 Mass. App. Ct. 190, 195 (1987). See *United States* v. *Gianni*, 678 F.2d 956, 958, 959-960 (11th Cir.), cert. denied, 459 U.S. 1071 (1982), and *United States* v. *Panitz*, 907 F.2d 1267, 1268-1270, 1272-1273 (1st Cir. 1990), where comparable undercover operations withstood constitutional scrutiny. Without undercover work on the part of the police few violations would be discovered and drug transactions in a particular neighborhood could not be discouraged. See *Commonwealth* v. *Harvard*, 356 Mass. at 459; *Commonwealth* v. *Comins*, 371 Mass. at 231.

4. Contrary to the defendant's contentions, the defendant could be found to have "possessed" the drugs. The distribution from the police to the defendant did not make his possession of cocaine legal, nor did the intention of the police to arrest him preclude him from having the necessary, if only momentary, control over the substance.[2] See *Commonwealth* v. *Harvard*, 356 Mass. at 458.

Accordingly, the order dismissing the complaint for illegal possession of a Class B substance is reversed, and the case is remanded to the District Court for trial.

*So ordered.*

---

[2]Indeed, as indicated, some purchasers escaped with the drugs.