NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-768                                           Appeals Court


COMMONWEALTH  vs.  CHRISTOPHER GOLDING.


No. 13-P-768.

Middlesex.     May 5, 2014. - July 23, 2014.

Present: Grasso, Grainger, & Milkey, JJ.

Firearms.  Controlled Substances.  Constitutional Law, Vagueness
     of statute.



Indictments found and returned in the Superior Court
Department on April 30, 2009.

The case was heard by Thomas P. Billings, J.


Stephen Neyman for the defendant.
Hallie White Speight, Assistant District Attorney (David
Solet, Assistant District Attorney, with her) for the
Commonwealth.


GRAINGER, J.  Following a jury-waived trial in the Superior

Court, the defendant was convicted of possession of a machine

gun while in the commission of a felony (G. L. c. 265, § 18B),

two counts of possession of a machine gun (G. L. c. 269,

§ 10[c]), and possession of a silencer (G. L. c. 269, § 10A).[1] The judge found that the defendant had participated in an exchange of drugs for firearms with an undercover special agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). We are unpersuaded by the numerous evidentiary, statutory, and constitutional arguments the defendant raises on appeal, and affirm the judgments.

Factual background. The judge could have found the following: On the basis of information received from a confidential informant, an ATF agent arranged for the controlled purchase of a hand grenade from the defendant. The grenade that the defendant sold to the informant contained no live explosives; confronted thereafter with the defective nature of his merchandise, the defendant offered to "make up the grenades" in a meeting with the informant and an undercover ATF agent at which the participants discussed the possibility of supplying machine guns and a silencer to the defendant. The negotiations began with a proposed exchange of weapons; thereafter the defendant offered to provide marijuana for the machine guns. The participants eventually agreed that the defendant would provide payment for the firearms in the form of OxyContin pills.

---

[1] Prior to trial, the defendant also pleaded guilty to trafficking in oxycodone over fourteen grams, G. L. c. 94C, § 32E(c)(1), and to four counts of distribution of a class B substance, G. L. c. 94C, § 32A(a).

After the defendant had taken possession of the firearms, he was arrested. We refer to additional facts as they pertain to the issues raised on appeal.

Sufficiency of the evidence. The defendant asserts that the evidence was insufficient to support his conviction of possession of a machine gun while in the commission of a felony, G. L. c. 265, § 18B.[2] The basis of his argument is that the defendant's receipt of the machine guns from the undercover officer as payment for drugs followed the defendant's transfer of drugs to the officer by a second or so.[3] On this sequence of events the defendant claims that because the felonious transfer of drugs to the officer was completed an instant before he took possession of the firearms, he cannot be charged with possession of the machine guns "while" committing a felony. Under the defendant's approach a conviction would require distrustful participants to a guns-for-drugs exchange to relinquish what they were trading only when they both also held what they were receiving. We consider this approach, which relies on

---

[2] The underlying felony was trafficking in oxycodone, to which he had pleaded guilty. See note 1, supra.

[3] The officer's report stated that he "placed the pills in his jacket pockets and began showing Golding the firearms in the bag."

incidental timing that is entirely immaterial to the transaction to which the defendant agreed, to be artificial and strained.[4]

As the Commonwealth has argued, without the guns there would have been no drug transaction.  See Commonwealth v. Hines, 449 Mass. 183, 190 (2007) (requirement of "[s]ome nexus" between the firearm and the felony in terms of "proximity and logical relation").  The defendant's accomplished intention to engage in a contemporaneous exchange of drugs for firearms satisfies the statute and provides the required element of "some nexus" between the possession of the firearm and the underlying felony.

Nexus required by G. L. c. 265, § 18B.  In a related argument, the defendant contends that the nexus required by the statute is lacking because it was the undercover officer, and not the defendant, who proposed exchanging guns for drugs.[5]

---

[4] This is not a case in which a significant amount of time transpired after the delivery of the drugs, and we do not address such a possibility.

[5] In fact, the record establishes that it was the defendant who introduced drugs into a proposed weapons exchange. Regardless, the defendant does not contend that he was entrapped into committing a crime that he was not otherwise disposed to commit.  We are not confronted with the potentially troubling situation where an undercover police officer, an agent of the Commonwealth, brings a firearm to a drug deal as payment, transforming the nature of the crime, and thereby enhancing the punishment for the underlying felony of drug distribution by an additional five or ten years.  The defendant's conduct falls within the literal sweep of the statute, and the enhanced punishment is appropriately left to Legislative determination.

Regardless of the legal basis invoked to support this argument,[6] it is unavailing here.  The evidence indicated that negotiations progressed from a potential weapons swap to the defendant's proposal to provide marijuana in exchange for the weapons, and culminated with an agreement based on his promise to commit a felony through the delivery of oxycodone.  There is no authority for the proposition that the mutual agreement to change the form of compensation for a weapons purchase affects the underlying mens rea.  The Commonwealth merely needed to demonstrate that the defendant knew he was possessing a firearm.  See Commonwealth v. Jackson, 369 Mass. 904, 916 (1976) (conviction under G. L. c. 269, § 10[a], prohibiting unlicensed possession of firearms on a "strict liability" basis, upheld where "the accused knew that he was carrying a firearm").

The argument that the fleeting opportunity to inspect the weapons was insufficient to qualify as possession is also unavailing.  We decline to give serious consideration to the suggestion that the officer was required to give the defendant a chance to operate a machine gun during a controlled undercover exchange of drugs for weapons, and immediately before effecting

---

[6] The defendant's brief alternatively refers to principles of mens rea, and an inability to enjoy any possessory benefit from the receipt of the machine guns due to his arrest at the scene.

an arrest.  See Commonwealth v. Lacend, 33 Mass. App. Ct. 495, 498 (1992).

Proof of weapons' characteristics.  In a corollary to the defendant's argument that the inability to inspect the weapons he received as payment for the drugs defeats the element of possession necessary for conviction, he also maintains that the very brief period he handled the machine guns negates the necessary knowledge on his part that these were firearms. Absent inspection, he claims, he could not know that he was in possession of an operable firearm as defined by G. L. c. 140, § 121.  He does not dispute that he intended to acquire firearms as defined by the statute, and he does not challenge the sufficiency of the evidence with respect to the operability of the machine guns he received.  His lack of opportunity to verify the guns' operability at the moment of receipt does not defeat the element of possession.

Interpretation of G. L. c. 265, § 18B.  The defendant asserts that the judge's interpretation of G. L. c. 265, § 18B, was predicated on a misinterpretation of the analogous Federal provision, 18 U.S.C. § 924(c) (2006).  The language of the two statutes differs, however, and we find no error in the judge's application of G. L. c. 265, § 18B.  Our statute criminalizes possession at the time a felony is committed, regardless whether the weapon is employed to commit the felony.  We discern no

direct relevance in Federal Circuit and United States Supreme Court decisions interpreting the requirement that a firearm be possessed "in furtherance" of the underlying crime, or that the underlying crime "be committed by the use of a deadly or dangerous weapon," 18 U.S.C. § 924(c)(1)(A) (2006). Our cases require only some nexus between the firearm and the underlying felony. See Commonwealth v. Hines, supra. As stated, the evidence here supports the finding of the necessary nexus.

Contract law principles. The defendant asserts that the judge erroneously imported principles of contract law to establish the relationship between the drugs and the guns required for a conviction. His argument is that the law does not recognize an illegal contract, hence parties to such an arrangement have no ability to enforce the terms, hence there is no element of "consideration" linking firearms to this drug transaction. The judge rightly observed that the defendant agreed to accept guns in payment for drugs; the illegality of the exchange does not defeat the application of the statute. To the contrary, it is an essential element of the crime.

The issue of vagueness. The defendant argues that the statute is defectively vague, both on its face and as applied to him, under the United States Constitution and the Massachusetts

Declaration of Rights.[7]  He supports his argument by offering

examples of unintended application.[8]  This argument ignores

"[s]everal principles applicable to vagueness challenges . . . .

Where, as here, the challenge involves no claim that an

overbroad statute threatens First Amendment interests, a

defendant is entitled to assert only his rights and not those of

others who might be affected by the challenged statute in some

different way."  Commonwealth v. Jasmin, 396 Mass. 653, 655

(1986).  See Commonwealth v. Hendricks, 452 Mass. 97, 98 n.1

(2008).  Consequently, the defendant cannot seek relief on the

basis that the statue is unconstitutional on its face.

His argument also ignores the nexus requirement adopted by

the case law.  "[T]he Legislature's obvious intention [is] to

'punish the underlying felonies more seriously when a firearm is

involved.'"  Commonwealth v. Hines, supra at 189, quoting from

Commonwealth v. Hawkins, 21 Mass. App. Ct. 766, 769 (1986)

(emphasis supplied).  In this case the close connection between

the underlying felony and the firearm is beyond dispute.

---

[7] The defendant did not raise a constitutional challenge to
the statute in the trial court.  Consequently, our consideration
is limited to determining whether there was a substantial risk
of a miscarriage of justice.  See Commonwealth v. Chou, 433
Mass. 229, 238 (2001).

[8] For example, he posits that under G. L. c. 265, § 18B, a
licensed gun owner who is convicted of tax evasion could be
convicted of possession of a firearm "while in the commission
. . . of an offense which may be punished by imprisonment in the
state prison."

Judgments affirmed.