NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

20-P-206                                             Appeals Court

COMMONWEALTH  vs.  CESAR CASTRO.

No. 20-P-206.

Suffolk.     January 5, 2021. – April 27, 2021.

Present:  Meade, Milkey, & Neyman, JJ.


Consent.  Privacy.  Evidence, Photograph, Authentication,
     Intent.  Practice, Criminal, Required finding.
     Constitutional Law, Vagueness of statute.



     Complaint received and sworn to in the Chelsea Division of
the District Court Department on March 7, 2018.

     The case was tried before D. Dunbar Livingston, J.


     Rachel T. Rose for the defendant.
     Kathryn Sherman, Assistant District Attorney, for the
Commonwealth.


     NEYMAN, J.  Following a trial in the District Court, a jury

convicted the defendant, Cesar Castro, of photographing an

unsuspecting nude or partially nude person in violation of G. L.

c. 272, § 105 (b).  On appeal, the defendant challenges the

sufficiency of the evidence, the admission of certain exhibits

on authentication grounds, and the constitutionality of the first paragraph of § 105 (b).  We affirm.

Background.  We summarize the facts the jury could have found, viewing the evidence in the light most favorable to the Commonwealth.  See Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).  In or around 2012 or 2013, the defendant and the victim entered into a relationship.  "At first it was just a friendship, but then . . . [they] became romantically involved."  Although their "romantic relationship ended in 2015," on "bad terms," they still communicated on occasion through text messages.

In October 2017, the victim went on vacation in Mexico to celebrate her birthday with her new boyfriend.  On October 12, during her return flight to Boston, she received notification of Instagram messages[1] from the defendant on her cell phone.  The victim recognized the Instagram account as the defendant's because she had "follow[ed]" the account; the account name, "letitflyceez," had always belonged to the defendant; the profile photograph in the "icon" on the account was a photograph of the defendant; and she had seen the defendant "post personal things on this account before."  Upon arrival in Boston, the

---

[1] "Instagram, which can be downloaded as a cell phone application, is a social media platform that enables users to share photographic content and send messages to other users." Commonwealth v. McMann, 97 Mass. App. Ct. 558, 558 n.1 (2020).

victim opened the Instagram direct messages and saw "a thread of messages that he had sent." The first Instagram message included a "screenshot" of text messages that the defendant had sent to the victim's cell phone to wish her a happy birthday.[2] The second Instagram message from the defendant said, "Wow, can't even say nothing back." The following message from the defendant contained "a photo, directly from the . . . [defendant's] Instagram account." The photograph showed the victim partially unclothed while lying in bed in the defendant's apartment, and apparently sleeping.[3] The words, "Maybe you'll reply now," were displayed across the photograph.

After seeing the photograph, the victim "[f]reaked out, started crying, [and] started calling [her] best friend to ask her for advice." She felt "threatened" and "scared." The victim did not know the date on which the defendant took the photograph of her. She had never seen the photograph, was not aware that the defendant had taken the photograph, did not know that the photograph existed prior to receiving the message, did

---

[2] The defendant had sent the text message to the victim on her birthday. A telephone number was located at the top of the screenshot of the text messages attached to the Instagram message. The victim recognized that number as the defendant's cell phone number on which she had communicated with him on prior occasions.

[3] The photograph, which was admitted in evidence as an exhibit, showed the victim's naked buttocks. The victim testified that she was sleeping when the photograph was taken.

not consent to the taking of the photograph, did not want the photograph to be taken, and had "never taken a nude picture."

After viewing the photograph, the victim asked the defendant, via text message, "What're your intentions with that photo[?]" The defendant did not respond. The victim then contacted the police.

Discussion. 1. Sufficiency of evidence. The defendant argues that the Commonwealth presented insufficient evidence to sustain a conviction for photographing an unsuspecting nude or partially nude person. We apply the familiar test to determine "whether, after viewing the evidence in the light most favorable to the [Commonwealth], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis and citation omitted). Latimore, 378 Mass. at 677. "If, from the evidence, conflicting inferences are possible, it is for the jury to determine where the truth lies, for the weight and credibility of the evidence is wholly within their province." Commonwealth v. Lao, 443 Mass. 770, 779 (2005). See Commonwealth v. Nelson, 370 Mass. 192, 203 (1976) (evidence need not require jury to draw inference; sufficient that evidence permits inference to be drawn). See also E.B. Cypher, Criminal Practice and Procedure § 37.10 (4th ed. 2014).

To establish a violation of the first paragraph of G. L. c. 272, § 105 (b),[4] the Commonwealth must prove that the defendant (1) willfully photographed, videotaped, or electronically surveilled; (2) another person who was nude or partially nude; (3) with intent to secretly conduct or hide his activity; (4) when the other person was in a place and circumstance where she or he would have a reasonable expectation of privacy in not being so photographed; and (5) without the other person's knowledge or consent.[5]  See Commonwealth v. Robertson, 467 Mass. 371, 375-376 (2014).  The defendant does not dispute the sufficiency of the evidence as to the first two elements -- that he willfully photographed the victim, or that she was partially nude at that time.[6]  Rather, he argues that the

---

[4] The second and third paragraphs of § 105 (b), inserted by St. 2014, c. 43, § 2, are not at issue in this appeal.  See generally Commonwealth v. Wassilie, 482 Mass. 562, 565 (2019).

[5] The first paragraph of G. L. c. 272, § 105 (b), provides, in relevant part:

"Whoever willfully photographs, videotapes or electronically surveils another person who is nude or partially nude, with the intent to secretly conduct or hide such activity, when the other person in such place and circumstance would have a reasonable expectation of privacy in not being so photographed, videotaped or electronically surveilled, and without that person's knowledge and consent, shall be punished . . . ."

[6] General Laws c. 272, § 105 (a), defines "partially nude" as "the exposure of the human genitals, buttocks, pubic area or female breast below a point immediately above the top of the

evidence was insufficient to prove the final three elements delineated above -- that he took the photograph without the victim's knowledge or consent, that the victim had a reasonable expectation of privacy when the photograph was taken, and that he took the photograph with the intent to secretly conduct or hide his activity.[7]  We discuss the proof of each element in turn.

We need not dwell at length on the defendant's assertion that the Commonwealth failed to prove that he took the photograph without the victim's knowledge or consent.  Apart from conclusory assertions that there was no such evidence, and that the victim "did not testify that she had told [the defendant] never to take such a photo," the defendant devotes no analysis of this issue in his brief.  See Tinsley v. Framingham, 485 Mass 760, 766 n.13 (2020), citing Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019) (argument made "in passing . . . does not present any adequate appellate argument on the point"); Commonwealth v. Norman, 87 Mass. App. Ct. 344, 347 n.6

---

areola."  Here, there is no dispute that the photograph displayed the victim in a state of partial nudity.

[7] At trial, the defendant did not object to the admission of the photograph as an exhibit.  Rather, the defendant only objected at trial to the admission of the screenshots of the text message "thread."  We address, infra, the separate and distinct claim that the Instagram messages and their contents were inadmissible on authentication grounds.

(2015) (single unsupported sentence in defendant's brief "does not rise to appellate argument that we need consider"); Commonwealth v. Ciaramitaro, 26 Mass. App. Ct. 110, 114 n.5 (1988) (same).

Furthermore, and contrary to the defendant's claim, the victim testified that she was not aware that the defendant had taken the partially nude photograph, did not want the photograph to be taken, had never taken nude photographs, was "sleeping" in the photograph, and did not know of the existence of the photograph prior to receiving the Instagram message. This testimony alone was sufficient, under the Latimore standard, to prove that the defendant acted without the victim's knowledge or consent. The victim's reaction of shock and fear upon viewing the photograph further speaks to her lack of knowledge or consent.[8] See Commonwealth v. Shore, 65 Mass. App. Ct. 430, 433

---

[8] It is of course possible that the victim's reaction of surprise and horror at seeing the photograph stemmed from a reason other than a lack of knowledge. However, a rational juror -- viewing evidence of the victim's reaction in conjunction with her direct testimony that she did not consent to the photograph, did not know that the defendant took the photograph, and never took nude photographs -- could have reasonably inferred that her reaction was indicative of her lack of knowledge and consent. This was a classic jury question. See Lao, 443 Mass. at 779. See also Commonwealth v. Giang, 402 Mass. 604, 609 (1988), quoting Commonwealth v. Drew, 4 Mass. App. Ct. 30, 32 (1976) ("Whether an inference is warranted or is impermissibly remote must be determined, not by hard and fast rules of law, but by experience and common sense"); Commonwealth v. Casale, 381 Mass. 167, 173 (1980) ("inferences drawn by the

(2006) ("we do not require an explicit verbal or physical rebuff to prove lack of consent. Instead, we analyze lack of consent based on the totality of the circumstances"). See also Commonwealth v. Arana, 453 Mass. 214, 225 (2009) ("Evidence of a victim's state of mind or behavior following a crime has long been admissible if relevant to a contested issue in a case").

The defendant next argues that the Commonwealth failed to prove that the victim was "in such place and circumstance" where she "would have a reasonable expectation of privacy in not being so photographed." G. L. c. 272, § 105 (b). The defendant maintains that in view of the then-intimate relationship between the defendant and the victim, and the absence of evidence of any specific ban on nude photography in their relationship, the victim did not have a reasonable expectation of privacy in the bedroom of her boyfriend's apartment. To the contrary, he contends, "the bedroom is exactly where nude photos are most likely to be taken." In effect, the defendant argues that, barring evidence of an explicit prohibition on such activity, if one can see something in his or her bedroom, one can photograph, videotape, or memorialize it. The argument is unavailing.

The defendant's argument misperceives the requirements of the statutory element. As the Supreme Judicial Court has

jury need only be reasonable and possible and need not be necessary or inescapable").

explained, § 105 (b) requires that the person being photographed be "present in a place, private or not, where in the particular circumstances she would have a reasonable expectation of privacy in not being wilfully and secretly photographed while in that state" (emphasis added). Robertson, 467 Mass. at 380. Thus, the language of § 105 (b) does not speak to a generalized expectation of privacy, but to the reasonable expectation of privacy in not being "secretly" photographed, while nude or partially nude, in that "place and circumstance." Here, the victim was sleeping in her boyfriend's bedroom, a private place, and had a reasonable expectation of privacy in not having her partially naked body so photographed. See id. at 379-380. Simply because the victim was sleeping partially nude did not mean that she agreed to allow her body to be preserved in a photographic image, with the concurrent risk that the preserved image might be shared, displayed, or used for any other purpose in perpetuity. A person does not forever forfeit all privacy rights, without limitation, by engaging in intimate or personal contact with another. Cf. Commonwealth v. Nascimento, 91 Mass. App. Ct. 665, 667 (2017) ("A person does not lose all reasonable expectation of privacy in his or her covered 'sexual or intimate parts' simply by being in public").

The defendant next argues that there was insufficient evidence that he took the photograph "with the intent to

secretly conduct or hide such activity."  The defendant claims that taking candid photographs of a significant other for personal or sentimental reasons is not uncommon; that at the time he took the photograph he could have been acting spontaneously; and that there was no evidence for a juror to infer the requisite specific intent.  We disagree.

To be clear, the Commonwealth was obligated to prove the defendant's specific intent at the time of the actus reus -- here, the taking of the photograph.  Although the sending of the photograph accompanied by the statement, "Maybe you'll reply now," was reprehensible, the defendant was not charged with unlawful dissemination of the image under G. L. c. 272, § 105 (c),[9] and cannot be punished for that act in this case.  That notwithstanding, the Commonwealth introduced ample circumstantial evidence to meet its burden.  See Commonwealth v. Casale, 381 Mass. 167, 173 (1980) ("A person's knowledge or intent is a matter of fact, which is often not susceptible of proof by direct evidence, so resort is frequently made to proof by inference from all the facts and circumstances developed at the trial").

---

[9] General Laws c. 272, § 105 (c), provides, in relevant part, "Whoever willfully disseminates the visual image of another person, with knowledge that such visual image was unlawfully obtained in violation of the first and second paragraphs of subsection (b) and without consent of the person so depicted, shall be punished . . . ."

Specifically, the defendant chose to take the photograph of the partially nude victim while she was sleeping and without her consent.  This fact, viewed in conjunction with the other evidence delineated supra, could have been viewed by a rational juror as evidence that he intended to secretly conduct the photographing activity.  Furthermore, as detailed supra, the victim did not know that the defendant had taken the nude photograph, did not want the photograph to be taken, and had never taken nude photographs.  In addition, the defendant withheld the existence of the secretly taken photograph from the victim until he sent it through the Instagram message.  The combination of this evidence was sufficient to satisfy the statutory intent element.

In addition to the foregoing evidence, the defendant's written statement, "Maybe you'll reply now," viewed in connection with the totality of the evidence, could have been considered as evidence of his earlier intent to secretly conduct or hide his photographing activity.  Although the written statement and its dissemination along with the photograph was not the actus reus at issue here, it is black letter law that evidence of acts committed subsequent to a charged offense "may be admitted in the judge's discretion to establish . . . intent . . . or state of mind at the time of the crime," so long as it is not too remote in time.  Commonwealth v. Cardarelli, 433

Mass. 427, 434 (2001). See Commonwealth v. Rubin, 165 Mass. 453, 456 (1896) (Holmes, J.) (discussion of rule that subsequent conduct may be some evidence of party's original intent). Here, a rational juror could have viewed the written statement as a threat, and in conjunction with the totality of evidence at trial, as an implied admission by the defendant that he had secretly taken the photograph and withheld its existence in order to later leverage, coerce, threaten, harass, or intimidate the victim. See Commonwealth v. Fernandes, 427 Mass. 90, 94 n.2 (1998).

2. Authentication. The defendant contends that the judge abused his discretion in admitting the photograph within the Instagram message without sufficient authentication. This argument suffers from two initial shortcomings: (1) the defendant did not object at trial to the admission of the photograph in evidence, see note 7, supra; and (2) the defendant was convicted for secretly photographing the victim, and not for disseminating the image. Thus, the jury's assessment did not hinge on whether the Commonwealth proved that the defendant sent the photograph to the victim, but on whether the Commonwealth proved that the defendant took the photograph with the requisite intent. Insofar as the issue now proffered on appeal was not raised at trial, our review is limited to whether any alleged error created a substantial risk of a miscarriage of justice.

See Commonwealth v. Dirgo, 474 Mass. 1012, 1016 (2016). Regardless of the standard of review, we discern no error, as the Commonwealth presented substantial evidence to establish by a preponderance of the evidence that the defendant both took the photograph and sent the Instagram messages.

The defendant argues, inter alia, that it is "far from impossible" that someone other than he might have had access to a screenshot of him wishing his former girlfriend a happy birthday as well as her partially nude picture taken years earlier. While that may be so, "far from impossible" is not the legal standard at issue. Rather, "[w]ith regard to the authentication of evidence, the judge has a gatekeeper role, which requires the judge to assess the evidence and determine whether the jury or judge, acting as the fact finder, could find that the item in question is what its proponent claims it to be. See Mass. G. Evid. § 104(b) (2019)." Commonwealth v. Meola, 95 Mass. App. Ct 303, 308 (2019). "[T]here is no requirement that there be direct evidence to support a determination that a digital communication was sent by [a] defendant." Id. at 310-311. "Rather, a judge making this threshold determination may consider circumstantial evidence and look to 'confirming circumstances' sufficient for a reasonable jury to find by a preponderance of the evidence that the defendant [took and sent the photograph]." Id. at 311, quoting Commonwealth v. Purdy,

459 Mass. 442, 450 (2011).  See Mass. G. Evid. § 901(b)(11) (2021).

In the present case, the photograph shows the victim sleeping partially naked in a bed, and the victim testified that the photograph showed her sleeping in the defendant's bed.  In addition, the Commonwealth introduced abundant evidence in the form of confirming circumstances as contemplated by our case law.  First, the victim testified that the unique name on the Instagram account, "letitflyceez," belonged to the defendant; that he always had the same Instagram account; that she had seen photographs of the defendant on this account on prior occasions; and that she had seen him post personal things on this account. Second, the defendant's photograph was in the "icon" of this Instagram account.  Third, the victim recognized the text messages contained within the Instagram account as messages sent from the defendant's cell phone number to the victim's cell phone number.  Indeed, she recognized the defendant's number because it was her means of communicating with him, she had previously paid the bill for the defendant's cell phone account, and they had communicated "on this number before" about matters that only the victim and the defendant "knew" or "would know in particular."  See Purdy, 459 Mass. at 451.

Fourth, the messages from the defendant accurately referenced the victim's birthday, and were part of the text

message thread that she had received on her own cell phone.[10] Fifth, the victim testified that she slept in the nude or partially nude, on occasion, in the defendant's bedroom, and the photograph depicted the victim sleeping, partially nude, in the defendant's bedroom. Furthermore, she slept in a state of nudity or partial nudity only when she and the defendant were alone. Thus, it would be unlikely that another person would have taken the photograph.

Finally, the text messages showed escalating conduct by the author, culminating in the victim's receipt of the photograph containing the implied threat. Consistent with this chain of events, the evidence showed that, prior to receiving the photograph, the victim's relationship with the defendant had ended on "bad terms," she had not replied to his text message containing birthday wishes, and had not responded to his follow-up text message. In short, the proponent of the evidence -- here the Commonwealth -- presented myriad confirming circumstances "beyond simply the fact that the message was sent from an account in the name of the alleged author." Meola, 95 Mass. App. Ct. at 314-315. See Commonwealth v. Oppenheim, 86 Mass. App. Ct. 359, 368 (2014) (no error in admission of

---

[10] The victim described the "first screenshot," showing the text messages from the defendant, as part of a text conversation that she had with the defendant because "it was literally what I had in my phone a couple of days prior in text messages."

computer instant message conversations between defendant and witness in light of confirming circumstances beyond sender's self-identification that tended to corroborate authenticity of message from apparent author).  Contrast Commonwealth v. McMann, 97 Mass. App. Ct. 558, 562 (2020) (Commonwealth did not prove beyond reasonable doubt that defendant was person who wrote or sent message to victim "either through evidence that the message itself contained characteristics showing that the defendant wrote it, or through evidence establishing how secure Instagram accounts are and how the Instagram cell phone application works").  Accordingly, the admission of the photograph, Instagram messages, and the content therein was not error and did not create a substantial risk of a miscarriage of justice.[11]

3.  Constitutional challenge.  The defendant contends, for the first time on appeal, that G. L. c. 272, § 105 (b), is

_____

[11] The defendant also argues that the judge erred in failing to instruct the jury that before considering the content of the digital messages, they must find that the defendant sent such messages.  At trial, the defendant did not raise this issue, request such an instruction, or object to any instructions in the final charge.  Even assuming error, we discern no substantial risk of a miscarriage of justice here in view of the judge's clear and accurate instructions regarding the elements of the offense and burden of proof.  See Commonwealth v. Gilman, 89 Mass. App. Ct. 752, 759 n.8 (2016) (where judge did not instruct jury to find that defendant authored Facebook chat messages and "the defendant neither requested such an instruction nor objected to the instructions administered," there was no substantial risk of miscarriage of justice "[i]n light of the abundance of evidence that the defendant authored the messages attributed to him").

unconstitutionally vague and overbroad.  "We generally decline to consider constitutional issues for the first time on appeal in order to avoid an unnecessary constitutional decision" (quotation and citation omitted).  Commonwealth v. Guzman, 469 Mass. 492, 500 (2014).  Here, the defendant proffers a facial challenge to the statute that should have been raised in a pretrial motion to dismiss.  See Commonwealth v. Chou, 433 Mass. 229, 238 (2001).  Although our appellate courts have, on occasion, exercised "discretion to consider important questions of public concern raised for the first time on appeal," we hesitate to do so when "the record accompanying them is lacking, as is the case here, in providing a basis for their intelligent resolution."  Gagnon, petitioner, 416 Mass. 775, 780 (1994).  Compare Commonwealth v. Yasin, 483 Mass. 343, 349-350 (2019).

Here, the issue was not raised in the trial court, and was neither an extension of arguments raised at trial nor connected to the defense at trial.  That notwithstanding, even reviewing the unpreserved facial vagueness and overbreadth challenges for a substantial risk of a miscarriage of justice, as the defendant urges, the claim is unavailing.  See Chou, 433 Mass. at 238; Commonwealth v. Golding, 86 Mass. App. Ct. 55, 59 n.7 (2014).  On the facts of this case, we discern no such risk in view of the statute's specific intent requirement, and the added elements specifying the need to prove that the photographing

activity was conducted without the subject's knowledge or consent, and conducted where the subject was in a place and circumstance where he or she would have a reasonable expectation of privacy in not being so photographed.  These elements are "sufficiently specific so as to give fair notice as to what conduct is forbidden."  Commonwealth v. Wassilie, 482 Mass. 562, 576 (2019), quoting Commonwealth v. Adams, 389 Mass. 265, 270 (1983).  See Commonwealth v. Provost, 418 Mass. 416, 422 (1994) (where "statute is readily subject to a narrowing construction, the doctrine of overbreadth may not be employed" [quotation and citation omitted]).  See also Wassilie, supra (concluding that third paragraph of § 105 [b] is not unconstitutionally vague).

Judgment affirmed.